Philip L. Pillsbury, Jr. (SBN 72261)
ppillsbury@pillsburylevinson.com
Vedica Puri (SBN 176252)
vpuri@pillsburylevinson.com
PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor
San Francisco, CA 94111
Telephone: (415) 433-8000
Facsimile: (415) 433-4816

Attorneys for Plaintiff
ORIENT FISHERIES, INC., dba OFI MARKESA INTERNATIONAL

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| ORIENT FISHERIES, INC., dba OFI MARKESA INTERNATIONAL, a California Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, a Pennsylvania Corporation; <br><br> Defendants. | Case No. CV07-3945 GAF (AJW) <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Orient Fisheries, Inc., dba OFI Markesa International (hereinafter "OFI"), complains of Defendant National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union") and alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for declaratory relief and breach of insurance contract. As set forth more fully below, in December 2004, OFI learned that it

had suffered a loss due to employee dishonesty (hereinafter the "Fidelity Loss"). OFI promptly notified National Union of the Fidelity Loss and submitted a claim to National Union under a Comprehensive Dishonesty, Disappearance and Destruction Policy issued by National Union (hereinafter, the "Policy"). National Union has refused to indemnify OFI for the Fidelity Loss.  In this action, OFI seeks a declaration as to its rights, and National Union's obligations, under the Policy as respects the Fidelity Loss.  OFI further seeks damages resulting from National Union's breach of its contractual obligations to indemnify OFI for the Fidelity Loss.

## PARTIES

2.     Plaintiff Orient Fisheries, Inc., dba OFI Markesa International ("OFI") is a California corporation which has its principal place of business in Vernon, California.

3.     National Union Fire Insurance Company of Pittsburgh, PA ("National Union") is a Pennsylvania corporation which has its principal place of business in New York, New York and which has transacted and/or presently transacts business in the State of California.

## THE FIDELITY LOSS

4.     This insurance coverage action relates to a loss that OFI has suffered as a result of employee dishonesty in connection with a series of business transactions for the purchase and importation of seafood from Mazatlan, Mexico (hereinafter the "Fidelity Loss").  OFI is, among other things, a major importer, processor and distributor of seafood in the United States.  One of OFI's major sources of imported seafood is Mexico.  During all relevant times, OFI purchased seafood from Mexican fishing boat operators through third parties located in Mazatlan, Mexico.

5.     OFI is informed and believes, and on that basis alleges, that from November 2002 to December 2004 one or more employees of OFI undertook

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

various fraudulent and dishonest actions that induced OFI to transfer millions of dollars in funds by wire to one or more third parties in Mexico, purportedly for the purpose of purchasing, or making advances on purchases of, seafood for importation, processing and distribution by OFI in the United States, but which instead resulted in loss to OFI.

6.     OFI is informed and believes, and on that basis alleges, that said employee(s) committed such fraudulent and dishonest acts with the manifest intent (i) to cause OFI to sustain a loss, and (ii) to obtain a financial benefit for themselves and/or for other persons or organizations intended by the employee(s) to receive such benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment).

7.     The amount of OFI's Fidelity Loss is in excess of $9 million.

8.     OFI discovered the Fidelity Loss in December 2004.

9.     OFI notified National Union of the Fidelity Loss in December 2004, and promptly made a claim under the Policy for recovery of such loss.

10.     On or about November 30, 2006, OFI and National Union entered into a Tolling Agreement relating to OFI's Fidelity Loss that provides a tolling period from November 16, 2006 until the Tolling Agreement is terminated, which "shall be excluded from, and not be counted in, computing the running of time under any statutes of limitation or any other time-based limitations, defenses or policy conditions, whether at law, in equity, under statute, the Policy or other contract or otherwise, that might be asserted as a bar, limitation or defense to any suit, action or claim by either Party against the other Party arising out of or in connection with the matters herein." The Tolling Agreement further provides that the Tolling Agreement may be terminated by either party upon thirty days written notice to the other party. On April 4, 2007, OFI provided written notice of termination to National Union pursuant to the terms of the Tolling Agreement.

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF          Case No. CV07-3945 GAF (AJW)

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

## **THE NATIONAL UNION POLICY**

11.     OFI is a Named Insured under Comprehensive Dishonesty, Disappearance and Destruction Policy issued by National Union, policy no. 661-64-80, with a policy period of January 1, 2004 through January 1, 2005, and limits of liability of $10 million (hereinafter, the "Policy").  A copy of the Policy is attached hereto as **Exhibit A**.

12.     Pursuant to the insuring agreements and other terms and conditions of the Policy, National Union undertook as its contractual obligations, *inter alia*, to pay OFI for any loss of money, securities or other property which OFI sustains resulting from one or more fraudulent or dishonest acts committed by an employee acting alone or in collusion with others.

13.     Losses not specifically and unambiguously excluded by the Policy are covered.

14.     National Union received substantial premiums for the Policy.  OFI fully performed and complied with all of the applicable terms and conditions of the Policy, other than any terms and conditions which have been waived or excused or which National Union is estopped to assert, including timely providing notice to National Union with regard to the Fidelity Loss.

15.     The Fidelity Loss is a loss covered by the insuring agreements and other terms and conditions of the Policy.

16.     Pursuant to the terms of the Policy, National Union has the duty to indemnify OFI, up to the full policy limits of liability, for the Fidelity Loss that OFI has suffered.

17.     All actions OFI has taken with respect to the Fidelity Loss, including its efforts to mitigate its losses, have been reasonable, and none has prejudiced the ability of National Union to fulfill its contractual obligations.

18.     Despite timely notice by OFI to National Union of the Fidelity Loss, and demand by OFI to National Union for payment of the losses incurred by OFI

pursuant to the terms of the Policy, National Union has failed and refused to indemnify OFI for the losses OFI has incurred in connection with the Fidelity Loss.

## FIRST CLAIM FOR RELIEF

### (Declaratory Relief)

19. OFI realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 18, as if fully set forth herein.

20. Pursuant to the terms of the Policy, National Union is obligated to indemnify OFI for the full amount of the losses OFI has incurred as a result of the Fidelity Loss.

21. An actual controversy exists between OFI and National Union concerning the proper construction and interpretation of the Policy and the rights and obligations of the parties with respect to National Union's duty to indemnify OFI for the losses OFI has incurred as a result of the Fidelity Loss.

22. The controversy is of sufficient immediacy to justify the issuance of a declaratory judgment.

23. The issuance of declaratory relief by this Court will terminate some or all of the existing controversy between the parties.

24. OFI is entitled to a declaration of the rights and obligations of the parties, including, but not limited to, a finding that, pursuant to the insuring agreements and other terms and conditions of the Policy, National Union is obligated to indemnify OFI for the full amount of the losses OFI has incurred as a result of the Fidelity Loss.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

25. OFI realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 18, as if fully set forth herein.

///

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

26.     OFI has demanded that National Union pay OFI the full amount of the losses OFI has incurred as a result of the Fidelity Loss.

27.     National Union has breached its duties and obligations under the Policy by refusing to pay OFI for the losses OFI has incurred as a result of the Fidelity Loss.

28.     As a direct result of National Union's breach of its contract of insurance, OFI has been, and will continue to be, deprived of the benefits of the insurance coverage for which substantial premiums have been paid.

29.     OFI's damages as result of National Union's breach of its contract of insurance are in an amount in excess of $9 million.

## THIRD CLAIM FOR RELIEF

### (Breach of the Covenant of Good Faith and Fair Dealing)

30.     OFI realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 18, as fully set forth herein.

31.     Implied in each insurance policy is a covenant by the insurer that it will act in good faith and engage in fair dealing in connection with claims made by its insured; that it will do nothing to interfere with the rights of its insured to receive policy benefits; that it will give at least as much consideration to the interests of its insured as it gives to its own interests; that it will investigate all possible bases for coverage; that it will not unreasonably withhold its consent to a proposed settlement of an action against its insured; and that it will not refuse to pay any claim without thoroughly investigating the foundation for any denial (hereinafter referred to as "the implied covenant of good faith and fair dealing"). The implied covenant obligated National Union to promptly investigate OFI's claim for coverage related to the Fidelity Loss, to give good faith consideration to that claim, and to exercise is own rights under the Policy in good faith.

32.     At all material times, National Union violated the implied covenant of good faith and fair dealing by, *inter alia*, the following:

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

(a)  Consciously and unreasonably refusing to pay to OFI insurance benefits to which it is entitled pursuant to the Policy, and depriving OFI of insurance benefits rightfully due to it with the knowledge that said conduct was and is wrongful and contrary to National Union's obligations under the Policy and the law;

(b)  Consciously and unreasonably failing to properly investigate OFI's claim related to the Fidelity Loss fairly and in good faith, and refusing to give OFI's interests at least as much consideration as National Union gave its own interests;

(c)  Consciously and unreasonably denying OFI's claim related to the Fidelity Loss without thoroughly investigating the foundation for the denial; and

(d)  Consciously and unreasonably misinterpreting the facts, policy provisions and law at issue in a way calculated to deprive OFI of insurance policy benefits to which it is entitled.

33.     OFI is informed and believes, and thereon alleges, that the aforementioned conduct by National Union represents a common pattern and practice on its part.

34.     OFI is informed and believes, and thereon alleges, that in engaging in the conduct alleged herein National Union acted with malice, fraud and/or oppression, as defined in California Civil Code section 3294.

35.     As a proximate result of National Union's actions, OFI has been damaged in an amount in excess of $9 million.

36.     As a further proximate result of National's breach of the implied covenant of good faith and fair dealing, OFI has incurred, and will continue to incur, attorneys' fees and related costs in order to obtain the insurance policy benefits unreasonably withheld by National Union.

///

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

37.     As a result of National Union's conduct alleged herein, OFI is entitled to recover compensatory damages, including insurance policy benefits, interest thereon, and attorneys' fees and expenses, and it also is entitled to recover punitive damages from National Union in an amount sufficient to punish and make an example of it, in order to deter similar conduct in the future.

## PRAYER FOR RELIEF

WHEREFORE, OFI prays for relief as follows:

1.     With respect to the First Claim for Relief against National Union, OFI requests that the Court enter judgment declaring that, pursuant to the insuring agreements and other terms and conditions of the Policy, National Union is obligated to indemnify OFI for the full amount of the losses OFI has incurred as a result of the Fidelity Loss.

2.     With respect to the Second Claim for Relief against National Union, OFI requests that the Court enter judgment against National Union, and award OFI actual and consequential damages according to proof at trial, plus interest according to law, in an amount in excess of $9 million.

3.     With respect to the Third Claim for Relief against National Union, OFI requests that the Court enter judgment against National Union, and award OFI (a) actual and consequential damages according to proof at trial, plus interest according to law, in an amount in excess of $9 million; (b) exemplary damages according to proof at trial; and (c) attorneys' fees and expenses incurred in obtaining insurance policy benefits according to proof at trial;

4.     That the Court award OFI all other costs reasonably incurred in this action; and

///

///

///

///

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

5.     That the Court award all other relief that it deems just and proper.

Dated:  February 18, 2009          PILLSBURY & LEVINSON, LLP

By:   /s/ Vedica Puri
      Vedica Puri
      Attorneys for Plaintiff
      ORIENT FISHERIES, INC., dba OFI
      MARKESA INTERNATIONAL, a
      California Corporation

## **DEMAND FOR TRIAL BY JURY**

Plaintiff OFI hereby demands trial by jury.

Dated:  February 18, 2009          PILLSBURY & LEVINSON, LLP

By:   /s/ Vedica Puri
      Vedica Puri
      Attorneys for Plaintiff
      ORIENT FISHERIES, INC., dba OFI
      MARKESA INTERNATIONAL, a
      California Corporation

PILLSBURY & LEVINSON, LLP
The Transamerica Pyramid
600 Montgomery Street, 31st Floor · San Francisco, CA 94111

FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF          Case No. CV07-3945 GAF (AJW)

# EXHIBIT A

Dec 14 04 05:23p    Fr  k A. Crowl Co.              1810  10229              P.2

# COMPREHENSIVE DISHONESTY, DISAPPEARANCE AND DESTRUCTION POLICY
## FORM A

The Company issuing this policy is indicated by an "X" in the box to  the left of the Company's name.

- ☒ **NATIONAL UNION FIRE INSURANCE COMPANY**
  **OF PITTSBURGH, PA.**
  (A Stock Insurance Company, herein called the Company)

- ☐ **AMERICAN HOME ASSURANCE COMPANY**
  **NEW YORK, NEW YORK**
  (A Stock Insurance Company, herein called the Company)

- ☐ **THE INSURANCE COMPANY OF**
  **THE STATE OF PENNSYLVANIA**
  **PHILADELPHIA, PA**
  (A Stock Insurance Company, herein called the Company)

---

## DECLARATIONS

**POLICY NUMBER**   *661-64-80*

Item 1.  Name of Insured:   *RED CHAMBER COMPANY (INC)*

(herein called
Insured):

Principal Address:   *1912 E. VERNON AVE.*
*LOS ANGELES, CA 90058*

---

Item 2.   Policy Period: From 12:01 a.m. *January 1, 2004*        to 12:01 a.m. on the effective date of the
Month, Day, Year
cancellation or termination of this policy, standard time at the Principal Address
as to each of said dates.

---

Item 3.
TABLE OF LIMITS OF LIABILITY

| | | |
|---|---|---|
| INSURING AGREEMENT I | Employee Dishonesty Coverage—Form A | *$10,000,000* |
| INSURING AGREEMENT II | Loss Inside the Premises Coverage | *$100,000* |
| INSURING AGREEMENT III | Loss Outside the Premises Coverage | *$100,000* |
| INSURING AGREEMENT IV | Money Orders & Counterfeit Paper Currency Coverage | *N/A* |
| INSURING AGREEMENT V | Depositors Forgery Coverage | *N/A* |
| If Added by Endorsements: | | |
| *INSURING AGREEMENT XIX* | *Computer Fraud Coverage* | *$10,000,000* |

---

Item 4.   The liability of the company is subject to the terms of the following endorsements
attached hereto:
*#1,#2,#3,#4,#5,#6,#7,#8,#9,#10,#11,#12*

RECEIVED

JAN 2 6 2004

FRANK A CROWL CO., INC.

---

Item 5.   The insured by the acceptance of this Policy gives notice to the Company
terminating or canceling prior bond(s) or policy(ies) No.(s)  *983-91-22*
such termination or cancelation to be effective as of the time this bond becomes
effective.

---

*Jan 20, 2004*

AUTHORIZED REPRESENTATIVE
4/84

---

## COMPREHENSIVE DISHONESTY DISAPPEARANCE
## & DESTRUCTION POLICY - FORM A

27788 (10/81)      *COPY*                                              7128440

Dec 14 04 05:23p    Frank A. Croul Co.                18185710229    P·3
MAY 20 2004 18:13 FR NATI... L UNION    213 689 3779 TO 91  95018229    P.03

## ENDORSEMENT #13

This endorsement, effective 12:01 AM    January 1, 2004                    forms a part of
policy number        661-64-80
issued to            RED CHAMBER COMPANY (INC)

by                   National Union Fire Insurance Company of Pittsburgh, Pa.


It is agreed that:

1.    At the request of the Insured, the Company hereby delete(s) from the list of
      Insured under the Policy the following:

MERCURY COLD STORAGE, INC. – (A "S" CORPORATION IN FLORIDA)
RED CHAMBER CO., INC. AS TO A 2/3 UNDIVIDED INTEREST AND PATTY
      JOTIKASTHIRA AND JAKKAEW KAMPINTANON, JT ALL AS TENANTS IN
      COMMON
SEAFOOD STATION


Accepted:


                                        BY _____
COMPREHENSIVE 3-D -BLANKET CRIME POLICIES              AUTHORIZED REPRESENTATIVE
TO DELETE A JOINT INSURED.

GR 5272a (5/67)   COPY


                                        ** TOTAL PAGE.03 **

Dec 14 04 05:23p      Frank A. Crowl Co.           1818-10229
MAY 20 2004 10:13 FR NATIO L UNION      213 889 3779 TO 91  J5010229      P.02  P.4

## ENDORSEMENT # 2

This endorsement, effective *12:01 am    January 1, 2004*        forms a part of
policy number  *681-64-80*
issued to  *RED CHAMBER COMPANY (INC)*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NAMED INSURED

It is agreed that:

Item 1., Named Insured, of the Declarations Page shall include the following:

RED CHAMBER COMPANY (A CALIFORNIA CORPORATION)
     DBA: MBS SALES, INC.
     DBA: LOS ANGELES BEVERAGE CORPORATION
RCCI (A CALIFORNIA PARTNERSHIP)
STANFORD COLD STORAGE, INC.
     DBA: VERNON COLD STORAGE
FISHERMAN'S PRIDE PROCESSORS, INC.
     DBA : NEPTUNE FOODS
ORIENT FISHERIES, INC.
     DBA: VEGAS DISTRIBUTION COMPANY
     DBA: OFI MARKESA INTERNATIONAL
     DBA: BLUE PATAYA
TAMPA BAY FISHERIES, INC.
     DBA KITCHENS SEAFOOD                              *See* ~~MERCURY COLD STORAGE, INC. (A "S" CORPORATION IN FLORIDA)~~
H.L. FOODSERVICE, INC.
     DBA: H.L. FOOD COMPANY
     DBA: WING LEE SHRIMP CO.
AQUA STAR IMPORTS, INC.
INTERNATIONAL GOURMET FISHERIES, INC.
     DBA: MID-PACIFIC SEAFOODS
     DBA: VERNON SEAFOOD
~~RED CHAMBER CO., INC. AS TO A 2/3 UNDIVIDED INTEREST~~      *See next pg.*
     ~~AND PATTY JOTIKASTHIRA AND JAKKAEW KAMPINTANON,~~
     ~~JT ALL AS TENANTS IN COMMON~~
OCEAN BISTRO
~~SEAFOOD STATION~~          *See next pg.*

ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.

Draft Copy - 05/20/2004
**DRAFT COPY       END 2**                    _____
                                             AUTHORIZED REPRESENTATIVE

Dec 14 04 05:24p      Frank A. Crowl Co.              1818 10229              p.5

## ENDORSEMENT #13

This endorsement, effective 12:01 AM   *January 1, 2004*              forms a part of
policy number          *661-64-80*
issued to               *RED CHAMBER COMPANY (INC)*

by                     *National Union Fire Insurance Company of Pittsburgh, Pa.*

It is agreed that:

1.      At the request of the Insured, the Company hereby delete(s) from the list of
        Insured under the Policy the following:

*MERCURY COLD STORAGE, INC. – (A "S" CORPORATION IN FLORIDA)*
*RED CHAMBER CO., INC. AS TO A 2/3 UNDIVIDED INTEREST AND PATTY*
*     JOTIKASTHIRA AND JAKKAEW KAMPINTANON, JT ALL AS TENANTS IN*
*     COMMON*
*SEAFOOD STATION*

RECEIVED
JAN 3 0 2004
FRANK A. CROWL CO., INC.

Accepted:

BY _____

                    AUTHORIZED REPRESENTATIVE

COMPREHENSIVE 3-D -BLANKET CRIME POLICIES
TO DELETE A JOINT INSURED.

SR 5272z (5/57)  COPY

## ENDORSEMENT# 2

This endorsement, effective *12:01 am    January 1, 2004*        forms a part of
policy number  *661-64-80*
issued to   *RED CHAMBER COMPANY (INC)*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### NAMED INSURED

It is agreed that:

Item 1., Named Insured, of the Declarations Page shall include the following:

RED CHAMBER COMPANY (A CALIFORNIA CORPORATION)
    DBA: MBS SALES, INC.
    DBA: LOS ANGELES BEVERAGE CORPORATION
RCCI (A CALIFORNIA PARTNERSHIP)
STANFORD COLD STORAGE, INC.
    DBA: VERNON COLD STORAGE
FISHERMAN'S PRIDE PROCESSORS, INC.
    DBA : NEPTUNE FOODS
ORIENT FISHERIES, INC.
    DBA: VEGAS DISTRIBUTION COMPANY
    DBA: OFI MARKESA INTERNATIONAL
    DBA: BLUE PATAYA
TAMPA BAY FISHERIES, INC.
    DBA KITCHENS SEAFOOD
MERCURY COLD STORAGE, INC. - (A "S" CORPORATION IN FLORIDA) *ITT*
H.L. FOODSERVICE, INC.
    DBA: H.L. FOOD COMPANY
    DBA: WING LEE SHRIMP CO.
AQUA STAR IMPORTS, INC.
INTERNATIONAL GOURMET FISHERIES, INC.
    DBA: MID-PACIFIC SEAFOODS
    DBA: VERNON SEAFOOD
RED CHAMBER CO., INC. AS TO A 2/3 UNDIVIDED INTEREST
    AND PATTY JOTIKASTHIRA AND JAKKAEW KAMPINTANON, *) ITT*
    JT ALL AS TENANTS IN COMMON
OCEAN BISTRO
SEAFOOD STATION *ITT* .

*Tampa bay Fisheries Inc Dba: Kitchen Seafood*

ALL OTHER TERMS AND CONDITIONS SHALL REMAIN UNCHANGED.

**COPY**          *END 2*          AUTHORIZED REPRESENTATIVE

Dec 14 04 05:25p    Frank A. Crowl Co.              1818  10229         P.7
Jan 05 04 08:33a    Frank A Crowl Co              (818) 501-0229        P.2
01/02/2004 13:45 FAX 3108410000       TANAKA         215 195 1079              @002
Dec-16-03   11:40p   From-National Dc

## POLICYHOLDER DISCLOSURE STATEMENT
### UNDER
### TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

Unless you sign this form and return it to us rejecting Terrorism Coverage under the Federal Act, you will be covered for Terrorism as defined in the Act and your premium for this coverage is $609.

X    I hereby reject coverage in accordance with the Act.

_____
Signature of Insured

MIKE SUN KOE VI
Print Name/Title

12-31-03
Date

Insured Name : RED CHAMBER COMPANY (INC)
Policy Form : Comprehensive 3-D Policy (# 10/81)
Tab : 7128440, Subreferences : 099092040
Policy Period Effective Date From: 01/01/2004 To: 01/01/2005

Dec 14 04 05:25p     Frank A. Crowl Co.          1018F 10229          p.8

## COMPREHENSIVE DISHONESTY, DISAPPEARANCE AND DESTRUCTION
### POLICY —IFORM A

The Company, in consideration of the payment of the premium, and subject to the Declarations made a part hereof the General Agreements, Conditions and Limitations and other terms of this Policy, agrees with the Insured, in accordance with such of the Insuring Agreements hereof as are specifically designated by the insertion of an amount of insurance in the Table of Limits of Liability, to pay the Insured for:

### INSURING AGREEMENTS
### EMPLOYEE DISHONESTY COVERAGE—FORM A

I.   Loss of Money, Securities and other property which the Insured shall sustain, to an amount not exceeding in the aggregate. the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement I, resulting directly from one or more fraudulent or dishonest acts committed by an Employee, acting alone or in collusion with others.

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent:

(a)    to cause the Insured to sustain such loss; and

(b)    to obtain financial benefit for the Employee, or for any other person or organization intended by the Employee to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

### LOSS INSIDE THE PREMISES COVERAGE

II.    Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof within the Premises or within any Banking Premises or similar recognized places of safe deposit.

Loss of (a) other property by Safe Burglary or Robbery within the Premises or attempt thereat, and (b) a locked cash drawer, cash box or cash register by felonious entry into such container within the Premises or attempt thereat or by felonious abstraction of such container from within the Premises or attempt thereat.

Damage to the Premises by such Safe Burglary, Robbery or felonious abstraction, or by or following burglarious entry into the Premises or attempt thereat, provided with respect to damage to the Premises the insured is the owner thereof or is liable for such damage.

### LOSS OUTSIDE THE PREMISES COVERAGE

III.    Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof outside the Premises while being conveyed by a Messenger or any armored motor vehicle company, or while within the living quarters in the home of any Messenger.

27806 (10/73)          COPY                    1

Loss of other property by Robbery or attempt thereat outside the Premises while being conveyed by a Messenger or any armored motor vehicle company, or by theft while within the living quarters in the home of any Messenger.

## MONEY ORDERS AND COUNTERFEIT PAPER CURRENCY COVERAGE

IV.    Loss due to the acceptance in good faith, in exchange for merchandise, Money or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company. If such money order is not paid upon presentation, or due to the acceptance in good faith in the regular course of business of counterfeit United States or Canadian paper currency.

## DEPOSITORS FORGERY COVERAGE

V.    Loss which the Insured or any bank which is included in the Insured's proof of loss and in which the Insured carries a checking or savings account, as their respective interests may appear, shall sustain through forgery or alteration of, on or in any check, draft, promissory note, bill of exchange, or similar written promise, order or direction to pay a sum certain in money, made or drawn by or drawn upon the Insured, or made or drawn by one acting as agent of the Insured, or purporting to have been made or drawn as hereinbefore set forth, including

(a)    any check or draft made or drawn in the name of the Insured, payable to a fictitious payee and endorsed in the name of such fictitious payee;

(b)    any check or draft procured in a face to face transaction with the Insured, or with one acting as agent of the Insured, by anyone impersonating another and made or drawn payable to the one so impersonated and endorsed by anyone other than the one so impersonated; and

(c)    any payroll check, payroll draft or payroll order made or drawn by the Insured, payable to bearer as well as to a named payee and endorsed by anyone other than the named payee without authority from such payee;

whether or not any endorsement mentioned in (a), (b) or (c) be a forgery within the law of the place controlling the construction thereof.

Mechanically reproduced facsimile signatures are treated the same as handwritten signatures.

The Insured shall be entitled to priority of payment over loss sustained by any bank aforesaid. Loss under this Insuring Agreement, whether sustained by the Insured or such bank, shall be paid directly to the Insured in its own name, except in cases where such bank shall have already fully reimbursed the Insured for such loss. The liability of the Company to such bank for such loss shall be a part of and not in addition to the amount of insurance applicable to the Insured's office to which such loss would have been allocated had such loss been sustained by the Insured.

If the Insured or such bank shall refuse to pay any of the foregoing instruments made or drawn as hereinbefore set forth, alleging that such instruments are forged or altered, and such refusal shall result in suit being brought against the Insured or such bank to

enforce such payment and the Company shall give its written consent to the defense of such suit, then any reasonable attorneys' fees, court costs, or similar legal expenses incurred and paid by the Insured or such bank in such defense shall be construed to be a loss under this Insuring Agreement and the liability of the Company for such loss shall be in addition to any other liability under this Insuring Agreement.

## GENERAL AGREEMENTS

### CONSOLIDATION—MERGER

**A.**    If, through consolidation or merger with, or purchase of assets of, some other concern, any persons shall become Employees or if the Insured shall thereby acquire the use and control of any additional Premises, the insurance afforded by this Policy shall also apply as respects such Employees and Premises, provided the Insured shall give the Company written notice thereof within thirty days thereafter and shall pay the Company an additional premium computed pro rata from the date of such consolidation, merger or purchase to the end of the current premium period.

### JOINT INSURED

**B.**    If more than one Insured is covered under this Policy, the Insured first named shall act for itself and for every other Insured for all purposes of this Policy. Knowledge possessed or discovery made by any Insured or by any partner or officer thereof shall, for the purposes of Sections 7, 8 and 15, constitute knowledge possessed or discovery made by every Insured. Cancelation of the insurance hereunder as respects any Employee as provided in Section 15 shall apply to every Insured. If, prior to the cancelation or termination of this Policy, this Policy or any Insuring Agreement hereof is canceled or terminated as to any Insured, there shall be no liability for any loss sustained by such Insured unless discovered within one year from the date of such cancelation or termination. Payment by the Company to the Insured first named of any loss under this Policy shall fully release the Company on account of such loss. If the Insured first named ceases for any reason to be covered under this Policy, then the Insured next named shall thereafter be considered as the Insured first named for all purposes of this Policy.

### LOSS UNDER PRIOR BOND OR POLICY

**C.**    If the coverage of an Insuring Agreement of this Policy, other than Insuring Agreement V, is substituted for any prior bond or policy of insurance carried by the Insured or by any predecessor in interest of the Insured, which prior bond or policy is terminated, canceled or allowed to expire as of the time of such substitution, the Company agrees that such Insuring Agreement applies to loss which is discovered as provided in Section 1 of the Conditions and Limitations and which would have been recoverable by the Insured or such predecessor under such prior bond or policy except for the fact that the time within which to discover loss thereunder had expired; provided:

    **(1)**    the insurance under this General Agreement C shall be a part of and not in addition to the amount of insurance afforded by the applicable Insuring Agreement of this Policy;

Dec 14 04 05:27p      Frank A. Crowl Co.          1818  10229              P.11

(2)     such loss would have been covered under such Insuring Agreement had such
        Insuring Agreement with its agreements, conditions and limitations as of the time
        of such substitution been in force when the acts or events causing such loss
        were committed or occurred; and

(3)     recovery under such Insuring Agreement on account of such loss shall in no
        event exceed the amount which would have been recoverable under such Insuring
        Agreement in the amount for which it is written as of the time of such
        substitution, had such Insuring Agreement been in force when such acts or events
        were committed or occurred, or the amount which would have been recoverable
        under such prior bond or policy had such prior bond or policy continued in force
        until the discovery of such loss, if the latter amount be smaller.

Insuring Agreement V shall also cover loss sustained by the insured at any time before
termination or cancelation of Insuring Agreement V, which would have been recoverable
under the coverage of some similar form of forgery insurance (exclusive of fidelity
insurance) carried by the insured or any predecessor in interest of the insured, had such
prior forgery insurance given all of the coverage afforded under Insuring Agreement V;
provided, with respect to loss covered by this paragraph:

(a)     the coverage of Insuring Agreement V is substituted on or after the date hereof
        for such prior forgery coverage and the insured or such predecessor, as the case
        may be, carried such prior forgery coverage on the office at which such loss was
        sustained continuously from the time such loss was sustained to the date the
        coverage of Insuring Agreement V was substituted therefor;

(b)     at the time of discovery of such loss, the period for discovery of loss under all
        such prior forgery insurance has expired; and

(c)     if the amount of insurance carried under Insuring Agreement V applicable to the
        office at which such loss is sustained is larger than the amount applicable to
        such office under such prior forgery insurance, and in force at the time such loss
        is sustained, then liability hereunder for such loss shall not exceed the smaller
        amount.

### THE FOREGOING INSURING AGREEMENTS AND GENERAL AGREEMENTS ARE SUBJECT TO THE FOLLOWING CONDITIONS AND LIMITATIONS:

#### POLICY PERIOD, TERRITORY, DISCOVERY

**Section 1.** Loss is covered under this Policy only if discovered not later than one year from the
end of the Policy Period.

Subject to General Agreement C:

(a)     this Policy, except under Insuring Agreements I and V, applies only to loss which occurs
        during the Policy Period within any of the States of the United States of America, the
        District of Columbia, Virgin Islands, Puerto Rico, Canal Zone, or Canada;

27806 (10/79)      *COPY*                 4

(b)    Insuring Agreement I applies only to loss sustained by the Insured through fraudulent or dishonest acts committed during the Policy Period by any of the Employees engaged in the regular service of the Insured within the territory designated above or while such Employees are elsewhere for a limited period;

(c)    Insuring Agreement V applies only to loss sustained during the Policy Period.

## EXCLUSIONS

Section 2. This Policy does not apply;

(a)    to loss due to any fraudulent, dishonest or criminal act by any Insured or a partner therein, whether acting alone or in collusion with others;

(b)    under Insuring Agreement I, to loss, or that part of any loss, as the case may be, the proof of which, either as to its factual existence or as to its amount, is dependent upon an inventory computation or a profit and loss computation;

(c)    under Insuring Agreements II and III, to loss due to any fraudulent, dishonest or criminal act by an Employee, director, trustee or authorized representative of any Insured, while working or otherwise and whether acting alone or in collusion with others; provided, this Exclusion does not apply to Safe Burglary or Robbery or attempt thereat;

(d)    under Insuring Agreements II and III, to loss due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(e)    under Insuring Agreements II and III, to loss (1) due to the giving or surrendering of Money or Securities in any exchange or purchase; (2) due to accounting or arithmetical errors or omissions; or (3) of manuscripts, books of account or records;

(f)    under Insuring Agreement II, to loss of Money contained in coin operated amusement devices or vending machines, unless the amount of Money deposited within the device or machine is recorded by a continuous recording instrument therein;

(g)    under Insuring Agreement III, to loss of insured property while in the custody of any armored motor vehicle company, unless such loss is in excess of the amount recovered or received by the Insured under (1) the Insured's contract with said armored motor vehicle company, (2) insurance carried by said armored motor vehicle company for the benefit of users of its service, and (3) all other insurance and indemnity in force in whatsoever form carried by or for the benefit of users of said armored motor vehicle company's service, and then this Policy shall cover only such excess;

(h)    under Insuring Agreements II and III, to loss due to nuclear reaction, nuclear radiation or radioactive contamination, or to any act or condition incident to any of the foregoing;

(i)    under Insuring Agreement II, to loss, other than to Money, Securities, a safe or vault, by fire whether or not such fire is caused by, contributed to by or arises out of the occurrence of a hazard insured against;

27806 (10/75)          **COPY**                    5

(j)     to loss due to the surrender of Money, Securities or other property away from the
        Premises as a result of a threat to do

    (1)     bodily harm to any person or

    (2)     damage to the Premises or Property owned by the Insured or held by the Insured
        in any capacity;

provided, however, these exclusions do not apply

    (a)     to Insuring Agreement I if coverage is afforded thereunder, or

    (b)     under Insuring Agreement III if coverage is afforded thereunder, to loss of Money,
        Securities or other property while being conveyed by a Messenger when there
        was no knowledge by the Insured of any such threat at the time the conveyance
        was initiated;

(k)     to the defense of any legal proceeding brought against the Insured, or to fees, costs or
        expenses incurred or paid by the Insured in prosecuting or defending any legal
        proceeding whether or not such proceeding results or would result in a loss to the
        Insured covered by this Policy, except as may be specifically stated to the contrary in
        this Policy;

(l)     to potential income, including but not limited to interest and dividends, not realized by
        the Insured because of a loss covered under this Policy;

(m)     to damages of any type for which the Insured is legally liable, except direct
        compensatory damages arising from a loss covered under this Policy;

(n)     to costs, fees and other expenses incurred by the Insured in establishing the existence of
        or amount of loss covered under this Policy.

### DEFINITIONS

Section 3. The following terms, as used in this Policy, shall have the respective meanings stated in
this Section:

"Money" means currency, coins, bank notes and bullion; and travelers checks, register checks
and money orders held for sale to the public.

"Securities"  means all negotiable and non-negotiable instruments or contracts representing
either Money or other property and includes revenue and other stamps in current use, tokens and
tickets, but does not include Money.

"Employee"  means any natural person (except a director or trustee of the Insured, if a
corporation, who is not also an officer or employee thereof in some other capacity) while in the
regular service of the Insured in the ordinary course of the Insured's business during the Policy
Period and whom the Insured compensates by salary, wages or commissions and has the right to
govern and direct in the performance of such service, but does not mean any broker, factor,

commission merchant, consignee, contractor or other agent or representative of the same general character. As applied to loss under Insuring Agreement I, the above words "while in the regular service of the insured" shall include the first 30 days thereafter; subject, however, to Sections 15 and 16.

"Premises" means the interior of that portion of any building which is occupied by the insured in conducting its business.

"Banking Premises" means the interior of that portion of any building which is occupied by a banking institution in conducting its business.

"Messenger" means the insured or a partner of the insured or any Employee who is duly authorized by the insured to have the care and custody of the insured property outside the Premises.

"Custodian" means the insured or a partner of the insured or any Employee who is duly authorized by the insured to have the care and custody of the insured property within the Premises, excluding any person while acting as a watchman, porter or janitor.

"Robbery" means the taking of insured property (1) by violence inflicted upon a Messenger or a Custodian; (2) by putting him in fear of violence; (3) by any other overt felonious act committed in his presence and of which he was actually cognizant, provided such other act is not committed by a partner or Employee of the insured; (4) from the person or direct care and custody of a Messenger or Custodian who has been killed or rendered unconscious; or (5) under Insuring Agreement II, (a) from within the Premises by means of compelling a Messenger or Custodian by violence or threat of violence while outside the Premises to admit a person into the Premises or to furnish him with means of ingress into the Premises, or (b) from a showcase or show window within the Premises while regularly open for business, by a person who has broken the glass thereof from outside the Premises.

"Safe Burglary" means (1) the felonious abstraction of insured property from within a vault or safe, the door of which is equipped with a combination lock, located within the Premises by a person making felonious entry into such vault or such safe and any vault containing the safe, when all doors thereof are duly closed and locked by all combination locks thereon, provided such entry shall be made by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon the exterior of (a) all of said doors of such vault or such safe and any vault containing the safe, if entry is made through such doors, or (b) the top, bottom or walls of such vault or such safe and any vault containing the safe through which entry is made, if not made through such doors, or (2) the felonious abstraction of such safe from within the Premises.

"Loss", except under Insuring Agreements I and V, includes damage.

## LOSS CAUSED BY UNIDENTIFIABLE EMPLOYEES

Section 4. If a loss is alleged to have been caused by the fraud or dishonesty of any one or more of the Employees and the insured shall be unable to designate the specific Employee or Employees causing such loss, the insured shall nevertheless have the benefit of Insuring Agreement I, subject to the provisions of Section 2 (b) of this Policy, provided that the evidence submitted reasonably

27806 (10/73)        *COPY*            7

Dec 14 04 05:29p    Fr..k A. Crowl Co.         1818' 10229          P.15

proves that the loss was in fact due to the fraud or dishonesty of one or more of the said Employees, and provided, further, that the aggregate liability of the Company for any such loss shall not exceed the Limit of Liability applicable to insuring Agreement I.

## OWNERSHIP OF PROPERTY; INTERESTS COVERED

Section 5. The insured property may be owned by the insured, or held by the insured in any capacity whether or not the insured is liable for the loss thereof, or may be property as respects which the insured is legally liable; provided, insuring Agreements II, III and IV apply only to the interest of the insured in such property, including the insured's liability to others, and do not apply to the interest of any other person or organization in any of said property unless included in the insured's proof of loss, in which event the third paragraph of Section 8 is applicable to them.

## BOOKS AND RECORDS

Section 6. The insured shall keep records of all the insured property in such manner that the Company can accurately determine therefrom the amount of loss.

## PRIOR FRAUD, DISHONESTY OR CANCELLATION

Section 7. The coverage of insuring Agreement I shall not apply to any Employee from and after the time that the insured or any partner or officer thereof not in collusion with such Employee shall have knowledge or information that such Employee has committed any fraudulent or dishonest act in the service of the insured or otherwise, whether such act be committed before or after the date of employment by the insured.

If, prior to the issuance of this Policy, any fidelity insurance in favor of the insured or any predecessor in interest of the insured and covering one or more of the insured's Employees shall have been canceled as to any of such Employees by reason of the giving of written notice of cancelation by the insurer issuing such fidelity insurance, whether the Company or not, and if such Employees shall not have been reinstated under the coverage of said fidelity insurance or superseding fidelity insurance, the Company shall not be liable on account of such Employees unless the Company shall agree in writing to include such Employees within the coverage of insuring Agreement I.

## LOSS—NOTICE—PROOF—
## ACTION AGAINST COMPANY

Section 8. Upon knowledge or discovery of loss or of an occurrence which may give rise to a claim for loss, the insured shall: (a) give notice thereof as soon as practicable to the Company or any of its authorized agents and, except under insuring Agreements I and V, also to the police if the loss is due to a violation of law; (b) file detailed proof of loss, duly sworn to, with the Company within four months after the discovery of loss.

Proof of loss under insuring Agreement V shall include the instrument which is the basis of claim for such loss, or if it shall be impossible to file such instrument, the affidavit of the insured or the insured's bank of deposit setting forth the amount and cause of loss shall be accepted in lieu thereof.

Dec 14 04 05:30p     Frank A. Crowl Co.          18185° '0229          p.16

Upon the Company's request, the Insured shall submit to examination by the Company, subscribe the same, under oath if required, and produce for the Company's examination all pertinent records, all at such reasonable times and places as the Company shall designate, and shall cooperate with the Company in all matters pertaining to loss or claims with respect thereto.

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, nor until ninety days after the required proofs of loss have been filed with the Company, nor at all unless commenced within two years from the date when the Insured discovers the loss. If any limitation of time for notice of loss or any legal proceeding herein contained is shorter than that permitted to be fixed by agreement under any statute controlling the construction of this Policy, the shortest permissible statutory limitation of time shall govern and shall supersede the time limitation herein stated.

## VALUATION—PAYMENT—REPLACEMENT

Section 9. In no event shall the Company be liable as respects Securities for more than the actual cash value thereof at the close of business on the business day next preceding the day on which the loss was discovered, nor as respects other property, for more than the actual cash value thereof at the time of loss; provided, however, the actual cash value of such other property held by the Insured as a pledge, or as collateral for an advance or a loan, shall be deemed not to exceed the value of the property as determined and recorded by the Insured when making the advance or loan, nor, in the absence of such record, the unpaid portion of the advance or loan plus accrued interest thereon at legal rates.

The Company may, with the consent of the Insured, settle any claim for loss of property with the owner thereof. Any property for which the Company has made indemnification shall become the property of the Company.

In case of damage to the Premises or loss of property other than Securities, the Company shall not be liable for more than the actual cash value of such property, or for more than the actual cost of repairing such Premises or property or of replacing same with property or material of like quality and value. The Company may, at its election, pay such actual cash value, or make such repairs or replacements. If the Company and the Insured cannot agree upon such cash value or such cost of repairs or replacements, such cash value or such cost shall be determined by arbitration.

## RECOVERIES

Section 10. If the Insured shall sustain any loss covered by this Policy which exceeds the applicable amount of insurance hereunder, the Insured shall be entitled to all recoveries (except from suretyship, insurance, reinsurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, on account of such loss under this Policy until fully reimbursed, less the actual cost of effecting the same; and any remainder shall be applied to the reimbursement of the Company.

## LIMITS OF LIABILITY

Section 11. Payment of loss under Insuring Agreement I or V shall not reduce the Company's liability for other losses under the applicable Insuring Agreement whenever sustained. The

Company's total liability (a) under Insuring Agreement I for all loss caused by any Employee or in which such Employee is concerned or implicated or (b) under Insuring Agreement V for all loss by forgery or alteration committed by any person or in which such person is concerned or implicated, whether such forgery or alteration involves one or more instruments, is limited to the applicable amount of insurance specified in the Table of Limits of Liability or endorsement amendatory thereto. The liability of the Company for loss sustained by any or all of the insured shall not exceed the amount for which the Company would be liable had all such loss been sustained by any one of the insured.

Except under Insuring Agreements I and V, the applicable limit of liability stated in the Table of Limits of Liability is the total limit of the Company's liability with respect to all loss of property of one or more persons or organizations arising out of any one occurrence. All loss incidental to an actual or attempted fraudulent, dishonest or criminal act or series of related acts at the Premises, whether committed by one or more persons, shall be deemed to arise out of one occurrence.

Regardless of the number of years this Policy shall continue in force and the number of premiums which shall be payable or paid, the limit of the Company's liability as specified in the Table of Limits of Liability shall not be cumulative from year to year or period to period.

## LIMIT OF LIABILITY UNDER THIS POLICY AND PRIOR INSURANCE

Section 12. This Section shall apply only to Insuring Agreements I and V. With respect to loss caused by any person (whether one of the Employees or not) in which person is concerned or implicated or which is chargeable to any Employee as provided in Section 4 and which occurs partly during the Policy Period and partly during the period of other bonds or policies issued by the Company to the insured or to any predecessor in interest of the insured and terminated or canceled or allowed to expire and in which the period for discovery has not expired at the time any such loss thereunder is discovered, the total liability of the Company under this Policy and under such other bonds or policies shall not exceed, in the aggregate, the amount carried under the applicable Insuring Agreement of this Policy on such loss or the amount available to the insured under such other bonds or policies, as limited by the terms and conditions thereof, for any such loss, if the latter amount be the larger.

## OTHER INSURANCE

Section 13. If there is available to the insured any other insurance or indemnity covering any loss covered by Insuring Agreement I or V, the Company shall be liable hereunder only for that part of such loss which is in excess of the amount recoverable or recovered from such other insurance or indemnity, except that if such other insurance or indemnity is a bond or policy of fidelity insurance, any loss covered under both such fidelity insurance and Insuring Agreement V shall first be paid under Insuring Agreement V. Any loss covered under both Insuring Agreements I and V shall first be paid under Insuring Agreement V and the excess, if any, shall be paid under Insuring Agreement I. The Company waives any right of contribution which it may have against any forgery insurance carried by any depository bank which is indemnified under Insuring Agreement V.

Under any other Insuring Agreement, if there is any other valid and collectible insurance which would apply in the absence of such Insuring Agreement, the insurance under this Policy shall apply

only as excess Insurance over such other insurance; provided, the Insurance shall not apply (a) to property which Is separately described and enumerated and specifically insured in whole or in part by any other Insurance; or (b) to property otherwise Insured unless such property Is owned by the Insured.

## SUBROGATION

**Section 14.** In the event of any payment under this Policy, the Company shall be subrogated to all the Insured's rights of recovery therefor against any person or organization and the Insured shall execute and deliver Instruments and papers and do whatever else is necessary to secure rights. The Insured shall do nothing after loss to prejudice such rights.

## CANCELATION AS TO ANY EMPLOYEE

**Section 15.** Insuring Agreement I shall be deemed canceled as to any Employee: (a) Immediately upon discovery by the Insured, or by any partner or officer thereof not in collusion with such Employee, of any fraudulent or dishonest act on the part of such Employee; or (b) at 12:01 A.M., standard time as aforesaid, upon the effective date specified in a written notice mailed to the Insured. Such date shall be not less than fifteen days after the date of mailing. The mailing by the Company of notice as aforesaid to the Insured at the address shown In this Policy shall be sufficient proof of notice. Delivery of such written notice by the Company shall be equivalent to mailing.

## CANCELATION OF POLICY OR INSURING AGREEMENT

**Section 16.** This Policy or any Insuring Agreement may be canceled by the Insured by mailing to the Company written notice stating when thereafter the cancelation shall be effective. This Policy or any Insuring Agreement may be canceled by the Company by mailing to the Insured at the address shown In this Policy written notice stating when not less than fifteen days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancelation stated in the notice shall become the end of the Policy Period for any affected Insuring Agreement. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

If the Insured cancels, earned premium shall be computed In accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancelation Is effected or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation.

## NO BENEFIT TO BAILEE

**Section 17.** This Section shall apply only to Insuring Agreements II and III.

The Insurance afforded by this Policy shall not Inure directly or Indirectly to the benefit of any carrier or other bailee for hire.

27806 (10/79)        *COPY*                    11

I

## ASSIGNMENT

Section 18. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed hereon; if, however, the Insured shall die, this Policy shall cover the Insured's legal representative as Insured; provided that notice of cancelation addressed to the Insured named in the Declarations and mailed to the address shown in this Policy shall be sufficient notice to effect cancelation of this Policy.

## CHANGES

Section 19. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy signed by an officer of the Company.

By acceptance of this Policy the Insured agrees that it embodies all agreements existing between the Insured and the Company or any of its agents relating to this insurance.

In witness whereof, the Company has caused this Policy to be executed on the Declarations page.

27806 (10/78)        *COPY*                    12

Dec 14 04 05:32p    Fre·  A. Crowl Co.         18189  0229              p.20

## ENDORSEMENT# 1

This endorsement, effective *12:01 am*        *January 1, 2004*           forms a part of
policy number   *681-64-80*
issued to *RED CHAMBER COMPANY (INC)*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TRIA PREMIUM ENDORSEMENT

It is agreed that:

1.  The premium for coverage pursuant to the Terrorism Risk Insurance Act of 2002
    ("TRIA Coverage") charged for the attached policy for the policy period is

    ( )
    (X)    Not applicable. TRIA coverage rejected by insured.

2.  Any coverage provided for losses caused by an act of terrorism as defined by TRIA
    (TRIA Losses) may be partially reimbursed by the United States under a formula
    established by TRIA as follows: 90% of TRIA Losses in excess of the insurer
    deductible mandated by TRIA, the deductible to be based on a percentage of the
    insurer's direct earned premiums for the year preceding the act of terrorism.

3.  A copy of the TRIA disclosure sent with the original quote is attached hereto.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

AUTHORIZED REPRESENTATIVE

81856 (3/03)    *COPY*

**END 001**

Page 1 of 1

## ENDORSEMENT# 3

This endorsement, effective *12:01 am*    *January 1, 2004*      forms a part of
policy number   *881-64-80*
issued to   *RED CHAMBER COMPANY (INC)*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

45A

It is agreed that:

1.    The Company shall not be liable under Insuring Agreement I on account of any loss through acts or defaults committed at any time, whether before or after this endorsement is effective, by any Employee or in which such Employee is concerned or implicated, unless the amount of such loss, after deducting the net amount of all reimbursement and recovery, including any cash deposit taken by the Insured, obtained or made by the Insured, other than from any bond or policy of insurance issued by a surety or insurance company and covering such loss, or by the Company on account thereof prior to payment by the Company of such loss, shall be in excess of *TWO HUNDRED FIFTY THOUSAND AND NO/100'S*                             Dollars (    *$250,000*) and then for such excess only, but in no event for more than the amount of insurance carried under Insuring Agreement I on such loss.

2.    The Company shall not be liable under Insuring Agreement II on account of any loss, except to the extent such loss is in excess of *FIVE THOUSAND AND NO/100'S*                             Dollars (    *$5,000*) with the insurance then applying to such excess only, subject otherwise to the applicable limit of the Company's liability.

3.    The Company shall not be liable under Insuring Agreement III on account of any loss, except to the extent such loss is in excess of *FIVE THOUSAND AND NO/100'S*                             Dollars (    *$5,000*) with the insurance then applying to such excess only, subject otherwise to the applicable limit of the Company's liability.

4.    In no event shall the Company be liable under any Insuring Agreement, as modified by this endorsement, for more than the amount specified in the Table of Limits of Liability as applicable to such Insuring Agreement subject, however, to Section 11.

5.    Section 10 is deleted and the following inserted:

    "Section 10. If the Insured shall sustain any loss covered by this Policy to which a deductible amount applies and such loss exceeds the applicable amount of insurance hereunder plus the Deductible Amount, the Insured shall be entitled to all recoveries made after payment by the Company of loss covered by this Policy (except from suretyship, insurance, re-insurance, security or indemnity taken by or for the benefit of the Company) by whomsoever made, less the actual cost of effecting such recoveries, until reimbursed for such excess loss; and any remainder, or, if there be no such excess loss, any such recoveries shall be applied first in reimbursement of the Company and thereafter in reimbursement of the Insured for that part of such loss within such deductible amount."

## *END 003*

SR 5138b (5/57)    COPY

## ENDORSEMENT # 3    (Continued)

6.      The insured shall, within the time and in the manner prescribed in the Policy, give the Company notice of any loss of the kind covered by Insuring Agreement I, whether or not the Company is liable therefor or for any part thereof, and upon the request of the Company shall file with it a brief statement giving the particulars concerning such loss.

Accepted:

_____
AUTHORIZED REPRESENTATIVE

COMPREHENSIVE 3-D POLICY-FORM A ONLY
TO PROVIDE A DEDUCTIBLE AMOUNT UNDER
INSURING AGREEMENT I, II, OR III.

**END 003**

SR 5138B (05/67)  *COPY*

## ENDORSEMENT# 4

This endorsement effective *12:01 am    January 1, 2004*        forms a part of
policy number   *661-64-80*
issued to *RED CHAMBER COMPANY (INC)*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### TERRITORIAL REVISIONS

It is agreed that:

1.  The Territorial Limits of Section 1. are hereby amended to anywhere in the world.

2.  If a Foreign Currency is involved in a loss sustained by the Insured under this Policy, the Company shall not be liable for more than the United States Dollar Value of the said Foreign Currency based on the Free Currency Rate of Exchange in effect at New York on the day of discovery of the loss.

3.  Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, limitations, conditions or provisions of the attached other than as above stated.

4.  This endorsement is effective as of 12:01 A.M. on standard time as specified in the Policy.

_____
AUTHORIZED REPRESENTATIVE

### END 004

53406 (3/92)   *COPY*

ME013

Dec 14 04 05:34p       Frank A. Crowl Co.           18185 0229           p.24

## ENDORSEMENT# 5

This endorsement, effective *12:01 am       January 1, 2004*          forms a part of
policy number   *661-64-80*
Issued to *RED CHAMBER COMPANY (INC)*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

### 60 DAY DISCOVERY SUPPLEMENT

1.   The first sentence of Section 1, Paragraph 1. in the Conditions and Limitations part of the
     Policy is deleted in its entirety and replaced by the following:

     Section 1. Loss is covered under this Policy only if discovered not later than sixty (60) days
     from the end of the Policy period, with the exception that a one (1) year discovery period
     will apply to the Employee Benefit Plans in accordance with ERISA Requirements.

2.   Nothing herein contained shall be held to vary, alter, waive or extend any of the terms,
     limitations, conditions or provisions of the attached policy other than as above stated.

3.   This endorsement is effective as 12:01 A.M. on Standard Time as specified in the Policy.

_____
AUTHORIZED REPRESENTATIVE

**END 005**

53405 (3/92)   *COPY*

ME012

## ENDORSEMENT# 6

This endorsement, effective *12:01 am     January 1, 2004*          forms a part of
policy number  *661-64-80*
issued to  *RED CHAMBER COMPANY (INC)*

by  *National Union Fire Insurance Company of Pittsburgh, Pa.*

### COMPUTER & FUNDS TRANSFER FRAUD ENDORSEMENT

It is agreed that:

1.   Item 3 of the Declarations is amended by adding the following:

   Insuring Agreement XIX

   A.   Computer Fraud Coverage          **$10,000,000**

   B.   Funds Transfer Fraud Coverage          **$10,000,000**

2.   The policy is amended by adding the following Insuring Agreement:

   **COMPUTER & FUNDS FRAUD COVERAGE**

   XIX.   Loss which the Insured shall sustain resulting directly from:

   A.   The theft of any insured property by Computer Fraud; or

   B.   The theft of funds from the Insured's Transfer Account at a Financial Institution through Fraudulent Transfer Instructions communicated to such Financial Institution.

3.   Section 3, Definitions is amended by adding the following:

   Computer Fraud means the wrongful conversion of assets under the direct or indirect control of a Computer System by means of:

   (1)   The fraudulent accessing of such Computer System;

   (2)   The insertion of fraudulent data or instructions into such Computer System; or

   (3)   The fraudulent alteration of data, programs or routines in such Computer System.

   Fraudulent Transfer Instruction means:

   (1)   Fraudulent Electronic, Telegraphic, Cable, Teletype or Telephone, Instructions to a Financial Institution to debit a Transfer Account and to transfer, pay or deliver funds from such account, which Instructions purport to have been transmitted by the Insured or by a person duly authorized by the Insured to issue such Instructions but which have been fraudulently transmitted by another, and

**COPY**          **END 6**

### ENDORSEMENT# 6     (Contin  )

This endorsement, effective 12:01 am     January 1, 2004          forms a part of
policy number   661-64-80
issued to   RED CHAMBER COMPANY (INC)

by      National Union Fire Insurance Company of Pittsburgh, Pa.

(2)   Fraudulent written instructions (other than those described in Insuring Agreement V) to a Financial Institution to debit a transfer account and to transfer, pay or deliver funds from such account through an Electronic Funds Transfer System at specified times or under specified conditions which written instructions purport to have been duly issued by the Insured but which have been fraudulently issued, forged or altered by another.

Financial Institution means:

(a)   a banking, savings or thrift institution, or

(b)   a stockholder, mutual fund, liquid assets fund or similar investment institution at which the Insured maintains a Transfer Account.

Transfer Account means an account maintained by the Insured at a Financial Institution from which the Insured or the Insured's authorized representatives may cause the transfer, payment or delivery of funds (1) by means of electronic, telegraphic, cable teletype or telephone instructions (communicated directly or through a cash management service or funds transfer system) or (2) by means of written instructions (other than those described in Insuring Agreement V) establishing the conditions under which such transfers are to be initiated by such Financial Institution through an electronic funds transfer system.

Theft means the intentional and unlawful taking of insured property to the deprivation of the Insured.

4.      The limit of liability set forth for Insuring Agreement XIX is the maximum limit of the Company's liability to pay loss arising from one occurrence. All acts committed by any person or in which such person is involved or implicated will be considered an occurrence unless the circumstances conclusively demonstrate the contrary, all acts committed by unidentifiable persons will be considered to have been committed by one person. If loss arising from or attributable to an occurrence is insured under two or more Insuring Agreements or under both A & B of Insuring Agreement XIX, the Company's liability on account of such loss shall not exceed the largest available Limit of Liability.

5.      All the exclusions in Section 2 of this policy which apply to Insuring Agreement II - except Exclusion (e) - shall also apply to Insuring Agreement XIX.  Insuring

COPY          END 6

## ENDORSEMENT # 6    (Contin  )

This endorsement, effective *12:01 am*     *January 1, 2004*      forms a part of
policy number   *661-64-80*
issued to   *RED CHAMBER COMPANY (INC)*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

Agreement XIX does not apply to:

(A)   Loss of computer time or use;

(B)   Loss due to unintentional errors or omissions;

(C)   Loss due to the voluntary giving or surrendering of insured property in a
purchase or exchange, whether legitimate or fraudulent.

6.   The insurance afforded by this endorsement does not inure directly or indirectly to
the benefit of any Financial Institution (other than the Insured) or to any Electronic
Funds Transfer System or Electronic Data Processor and any coverage hereunder
shall be specifically excess of any indemnity from or insurance taken for the benefit
of customers of any of the aforesaid.

7.   Coverage under Insuring Agreement XIX. A.   Applies only with respect to the
following insured property:

Money or Securities or Property located on the premises of the Insured.

8.   Coverage under Insuring Agreement XIX. B.   Applies only with respect to the
following funds:

Funds on deposit with a Financial Institution within the U.S. or Canada.

9.   Coverage does not apply to any loss or proprietary information, Trade Secrets,
Confidential Processing Methods or other confidential information of any kind.

10.   The company shall not be liable under this Insuring Agreement (Sections A & B) on
account of any loss, except to the extent such loss is in excess of *$250,000* with
the insurance then applying to such excess only, subject otherwise to the applicable
Limit of the Company's Liability.

*fed.*

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

*COPY*          *END 6*              AUTHORIZED REPRESENTATIVE

Dec 14 04 05:36p      Frank A. Crowl Co.          18185010229          p.28

## ENDORSEMENT # 7

This endorsement, effective    12:01 am      January 1, 2004        forms a part of
policy number    661-84-80
issued to    RED CHAMBER COMPANY (INC)

by      National Union Fire Insurance Company of Pittsburgh, Pa.

222

It is agreed that:

1.    The following shall be included as insured:
      ANY EMPLOYEE BENEFIT PLAN REQUIRED TO BE BONDED BY EMPLOYEE
      RETIREMENT INCOME SECURITY ACT OF 1974.

2.    "Employee" as used in the attached bond or  policy shall include any natural person
      who is a director or trustee of the insured while such director or trustee is engaged
      in handling funds or other property of any Employee Welfare or Pension Benefit Plan
      owned, controlled or operated by the insured or any natural person who is a trustee,
      manager, officer or employee of any such Plan.

TO COMPLY WITH BONDING REGULATIONS MADE
APPLICABLE TO THE EMPLOYEE RETIREMENT
INCOME SECURITY ACT OF 1974.

SR 6145 (02/85)  *COPY*

**END 007**

- 1 -

## ENDORSEMENT #7   (Continued)

3.   If the bond or policy, in accordance with the agreements, limitations and conditions thereof, covers loss sustained by two or more Employee Welfare or Pension Benefit Plans or sustained by any such Plan in addition to loss sustained by an insured other than such Plan, it is the obligation of the insured or the Plan Administrator(s) of such Plans under Regulations published by the Secretary of Labor implementing Section 13 of the Welfare and Pension Plans Disclosure Act of 1958 to obtain under one or more bonds or policies issued by one or more insurers an amount of coverage for each such Plan at least equal to that which would be required if such Plans were bonded separately.

4.   In compliance with the foregoing, payment by the Company in accordance with the agreements, limitations and conditions of the bond or policy shall be held by the insured, or if more than one by the insured, first named, for the use and benefit of any Employee Welfare or Pension Benefit Plan last sustaining loss so covered and to the extent that such payment is in excess of the amount of coverage required by such Regulations to be carried by said Plan sustaining such loss, such excess shall be held for the use and benefit of any other such Plan also covered in the event that such other Plan discovers that it has sustained loss covered thereunder.

5.   If money or other property of two or more Employee Welfare or Pension Benefit Plans covered under the bond or policy is co-mingled, recovery for loss of such money or other property through fraudulent or dishonest acts of Employees shall be shared by such Plans on a pro rata basis in accordance with the amount for which each such Plan is required to carry bonding coverage in accordance with the applicable provisions of said Regulations.

6.   The Deductible Amount applicable to loss sustained through acts or defaults committed by Employees shall not apply to loss sustained by an Employee Welfare Benefit Plan or Employee Pension Benefit Plan covered through acts or defaults committed by any Employee of any such Plan.

7.   Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the bond or policy, other than as stated herein.

Accepted:

_____
AUTHORIZED REPRESENTATIVE

TO COMPLY WITH BONDING REGULATIONS MADE
APPLICABLE TO THE EMPLOYEE RETIREMENT
INCOME SECURITY ACT OF 1974.

SR 6145 (2/85)   *COPY*

**END 007**

- 2 -

Dec 14 04 05:37p      Frank A. Crowl Co.          18185^'0229          P.30

## ENDORSEMENT#8

This endorsement effective  *12:01 am*      *January 1, 2004*          forms a part of
policy number  *661-64-80*
issued to  *RED CHAMBER COMPANY (INC)*

by      *National Union Fire Insurance Company of Pittsburgh, Pa.*

209

### DEFINITE TERM RIDER

It is agreed that:

1.      Item 2 of the Declarations of this policy or bond is deleted and replaced by the following:

Item 2. Policy/Bond Period: from 12:01 a.m. on  *January 1, 2004*
(MONTH/DAY/YEAR)

to 12:01 a.m. on  *January 1, 2005*                    , standard time at the Principal
(MONTH/DAY/YEAR)
Address to each of said dates. The liability of the Company or Underwriter under this
Policy or Bond shall not be cumulative from Period to Period."

2.      This rider/endorsement shall be effective at the same time the policy or bond is effective.

FOR USE WITH ANY CONTINUOUS BOND OR
POLICY WRITTEN ON DECLARATIONS PAGE BASIS
TO CONVERT TO A TERM BASIS OR TO EXTEND
THE TERM OF A DEFINITE TERM BOND OR POLICY.
NOT FOR USE OF PUBLIC EMPLOYEES OR PUBLIC
SCHOOL SYSTEM EMPLOYEES BLANKET BONDS OR
LABOR ORGANIZATION SCHEDULE BONDS.

_____
AUTHORIZED REPRESENTATIVE

SR 6079 (11/79)
J6087 (5/82)    *COPY*          **END 008**

Dec 14 04 05:37p      Fran A. Crowl Co.          18185  0229          p.31

## ENDORSEMENT# 9

This endorsement, effective *12:01 am*      *January 1, 2004*      forms a part of
policy number   *661-64-80*
issued to   *RED CHAMBER COMPANY (INC)*

by   *National Union Fire Insurance Company of Pittsburgh, Pa.*

## CALIFORNIA PREMIUM RIDER

It is agreed that:

1.   In compliance with the ruling of the Commissioner of Insurance of the State of California
and the Opinion of the Attorney-General of that State requiring that the premium for all
bonds or policies be endorsed thereon, the basic premium charged for the attached bond
for the period

from   *January 1, 2004*

to   *January 1, 2008*

is   *FIFTY FOUR THOUSAND THREE HUNDRED EIGHT AND NO/100'S*          Dollars (     *$54,308* )

CALIFORNIA PREMIUM RIDER
FOR USE OF ALL FORMS OF STANDARD BONDS TO
COMPLY WITH RULINGS OF THE INSURANCE
COMMISSIONER AND THE ATTORNEY-GENERAL

REVISED TO AUGUST 1988
SR 5862      **COPY**

*END 009*          AUTHORIZED REPRESENTATIVE

## ENDORSEMENT# 10

This endorsement, effective *12:01 am      January 1, 2004*        forms a part of
policy number   *661-64-80*
issued to *RED CHAMBER COMPANY (INC)*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

### REVISION OF KNOWLEDGE, INFORMATION AND DISCOVERY

It is agreed that:

1.  Section 7 is hereby modified to include the following additional sentence in the first paragraph:

    Knowledge or information of an employee having committed any fraudulent or dishonest act shall for the purpose of this section be knowledge or information by persons in the following specified Departments or employment capacities of the insured:

    *THE RISK MANAGEMENT DEPARTMENT*
    *AND/OR THE GENERAL COUNSEL*
    *AND/OR THE INTERNAL AUDIT DEPARTMENT*
    *AND/OR THE HUMAN RESOURCES DEPARTMENT*

2.  Section 8 is hereby modified to include the following additional sentence to the first paragraph:

    Knowledge or discovery of loss or an occurrence for the purpose of this section shall be knowledge or discovery by persons in the following specified Departments or employment capacities of the insured:

    *THE RISK MANAGEMENT DEPARTMENT*
    *AND/OR THE GENERAL COUNSEL*
    *AND/OR THE INTERNAL AUDIT DEPARTMENT*
    *AND/OR THE HUMAN RESOURCES DEPARTMENT*

3.  Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, limitations, conditions or agreements of the attached policy other than as above stated.

4.  This endorsement is effective as of 12:01 A.M. on standard time as specified in the policy.

_____
AUTHORIZED REPRESENTATIVE

**END 010**

53528 (4/92)   *COPY*

ME019

Dec 14 04 05:38p       Fran⁴ A. Crowl Co.           18185¨¨0229          p.33

## ENDORSEMENT#11

This endorsement, effective  *12:01 am*    *January 1, 2004*     forms a part of
policy number  *661-64-80*
issued to   *RED CHAMBER COMPANY (INC)*

by    *National Union Fire Insurance Company of Pittsburgh, Pa.*

32

It is agreed that:

1.     Insuring Agreement I does not apply to any loss resulting directly or indirectly from
trading, whether in the name of the insured or in a genuine or fictitious account.

Accepted:

COMPREHENSIVE 3-D -BLANKET CRIME POLICIES

WHEN ISSUED TO ANY COMMODITY BROKERAGE
HOUSE, OR ANY MUTUAL FUND OR ITS SALES
REPRESENTATIVE, OR ANY OTHER ORGANIZATION
ENGAGED IN TRADING ACTIVITY, TO EXCLUDE
TRADING LOSSES.

_____

AUTHORIZED REPRESENTATIVE

*END 011*

SR 5211b (10/79)  *COPY*

<u>ENDORSEMENT# 12</u>

This endorsement, effective *12:01 am*          *January 1, 2004*          forms a part of
policy number    *661-64-80*
issued to *RED CHAMBER COMPANY (INC)*

by     *National Union Fire Insurance Company of Pittsburgh, Pa.*

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**TOTAL TERRORISM EXCLUSION**

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or
indirectly as a result of or in connection with "terrorism" including but not limited to, any
contemporaneous or ensuing loss caused by fire, looting or theft.

DEFINITION – The following definition of terrorism shall apply:

"Terrorism" means the use or threatened use of force or violence against person or
property, or commission of an act dangerous to human life or property, or
commission of an act that interferes with or disrupts an electronic or
communication system, undertaken by any person or group, whether or not acting
on behalf of or in any connection with any organization, government, power,
authority or military force, when the effect is to intimidate, coerce or harm:

(1) A government;
(2) The civilian population of a country, state or community; or
(3) To disrupt the economy of a country, state or community.

"Terrorism" includes a certified act of terrorism defined by Section 102. Definitions,
of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

All other terms and conditions of the policy are the same.

AUTHORIZED REPRESENTATIVE

81286 (12/02)  *COPY*            **END 012**

                               Page 1 of 1